**GCI HEALTH CARE CENTERS, INC., d/b/a Village Green Nursing Home, Plaintiff,**

v.

**Tommy THOMPSON, Secretary of Health and Human Services, Defendant.**

No. 00–CV–2426.

United States District Court, District of Columbia.

April 25, 2002.

Thomas C. Fox, Reed, Smith, Shaw & McClay, L.L.P., Washington, DC, for GCI Health Care Centers, Inc., dba Village Green Nursing Home, plaintiff.

Mark E. Nagle, U.S. Attorney's Office, Washington, DC, Jonathan C. Brumer, U.S. Department of Health & Human Services, Health Care Financing Division, Baltimore, MD, for Tommy G. Thompson, Secretary, Department of Health and Human Services, federal defendant.

## MEMORANDUM OPINION

KOLLAR–KOTELLY, District Judge.

This case comes before the Court on the parties' cross motions for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c). Plaintiff, GCI Health Care Centers d/b/a Village Green Nursing Home ("Village Green"), requests judicial

review of the Secretary of Health and Human Services' ("Secretary") denial of Plaintiff's request for reimbursement of Medicare "bad debts." Upon review of the parties' motions for summary judgment, corresponding memoranda of law, oppositions and replies thereto, notice of and response to Plaintiff's supplemental authority, the administrative record, and the relevant law, the Court will deny Plaintiff's motion and grant Defendant's motion.

## BACKGROUND

A. *Medicare Program Statutory and Regulatory Framework*

The Secretary of Health and Human Services is granted the authority to promulgate rules and regulations implementing and interpreting Title XVIII of the Social Security Act, more commonly known as the Medicare Act. *See* 42 U.S.C. § 1395x(v)(1)(A). Under this Act, participating health care providers are reimbursed for the "reasonable costs" of services that they provide to Medicare patients. *Id.* Reasonable costs are defined as "the cost[s] actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services." *Id.*

The Secretary has delegated the administration of the Medicare regulations to the Center for Medicare and Medicaid Services ("CMS"), previously the Health Care Financing Administration ("HCFA")[1], and fiscal intermediaries. *See* 42 U.S.C. § 1395h, 1395u. The fiscal intermediaries, generally private insurance companies, receive an annual "cost report" from the providers detailing the providers' requests for reimbursement of reasonable costs. *See* 42 U.S.C. § 1395g(a). The intermediaries review and audit the report

to determine whether the claimed costs are "reasonable" and are properly apportioned between payors. *Id.* If a fiscal intermediary denies a reimbursement, the provider may appeal the decision to the Provider Reimbursement Review Board ("PRRB"). 42 U.S.C. § 1395oo(a). The Secretary has the authority to review the PRRB determination, 42 U.S.C. § 1395oo(f)(1), and has delegated that authority to CMS. A provider dissatisfied with the final decision of the Secretary may request judicial review of the decision pursuant to 42 U.S.C. § 1395oo(f)(1).

Medicare is composed of two parts, Part A, which deals with hospital and related costs, and Part B, which covers most therapeutic services. Reimbursement for reasonable costs is available to providers offering both "Part A" and "Part B" services. Part B is a voluntary program and is considered "supplemental medical insurance" that requires a Medicare enrollee to pay monthly premiums, annual deductibles and additional "fees per service" in the form of coinsurance or co-payments in order to receive coverage. 42 U.S.C. § 1395, 42 C.F.R. § 410.3.

Medicaid, Title XIX of the Social Security Act, is a joint federal/state insurance program providing medical coverage for medically and categorically needy persons. *See* 42 U.S.C. § 1396, *et seq.* 42 C.F.R. Part 430. States are not required to participate in the Medicaid program, but those that choose to participate receive financial assistance from the federal government. *Id.* States are required to submit their Medicaid plans to CMS for approval and, once approved, states are responsible for administering the programs. In some instances a person is eligible for both Medicare and Medicaid services. These

---

**1.** HCFA was the agency in existence at the time relevant to these proceedings. Therefore, the Court will use HCFA rather than CMS, to denote the agency when discussing the agency's regulations and findings.

persons, often referred to as "dual eligibles," may not be able to afford the premium, deductible, and coinsurance costs associated with Part B Medicare services. In order to remedy this problem, the Medicaid Act allows states to use Medicaid funds to pay these Part B costs for dual eligibles. *See* 42 U.S.C. §§ 1396a, 1396d.

### B. *Arizona's State Medicaid Program*

Arizona chose to provide Medicaid services to its needy residents and to that end implemented the Arizona Health Care Cost Containment System ("AHCCCS"). The program operates through two components, one that deals with acute care services, and the Arizona Long Term Care System ("ALTCS"), which deals with long term care services. Pl.Mem. at 6–7. ALTCS subcontracts with "program contractors" responsible for the direct administration of the Arizona plan. County agencies and Medicaid recipients enroll directly with program contractors, and health care providers are required to submit their claims and bills for reimbursement directly to these contractors. *Id.* In this case, Plaintiff contracted with Maricopa Managed Care Systems ("MMCS") and under that contract was required to submit its reimbursement claims to MMCS. *Id.* at 7. Plaintiff did not submit bills directly to ALTCS or AHCCCS. Administrative Record ("AR") at 328.

Arizona's plan provided in part that "a person determined dual eligible shall be entitled to the following benefits and services: (2) payment of Medicare Part B premiums, coinsurance, and deductibles." Arizona Administrative Code §§ R9–29–301 and R9–29–302. "Program contractors and other providers shall be responsible for providing the covered services

specified in R9–29–302 to dual eligible and enrolled members in accordance with the provisions specified in A.A.C. Title 9, Chapter 28." Notwithstanding this language in the state plan, MMCS sent a letter on October 23, 1996, with a memorandum to Plaintiff indicating that it would not provide reimbursements for Part B deductible and coinsurance amounts for Medicare/Medicaid dual enrollees. AR at 297 (January 23, 1996, memorandum from Andy Doley of MMCS) ("All authorized therapy services performed on MMCS Medicare patients should be billed to Medicare for payment in full. MMCS will not reimburse for these services.")

### C. *The Denial of Reimbursement for Bad Debts*

Plaintiff is a Skilled Nursing Facility ("SNF") that provides long term services primarily to Medicaid enrollees, Pl.Mem. at 7, and it is entitled to reimbursements for the reasonable costs of caring for its residents. 42 U.S.C. § 1395x(v)(1)(A). Plaintiff's reasonable costs include "bad debts" which are "amounts considered to be uncollectible from accounts and notes receivable that were created or acquired in providing services." 42 C.F.R. § 413.80. Additionally, Part B "deductibles and co-insurance amounts are reimbursable under the Program." HCFA Provider Reimbursement Manual ("PRM") § 300.[2]

Plaintiff submitted its cost report for fiscal year 1994 to its Medicare fiscal intermediary, Blue Cross/Blue Shield of Arizona ("BC/BS–AZ" or "Intermediary"), requesting reimbursement of $55,780 in bad debts related to Part B deductible and coinsurance payments for dual eligible enrollees. Plaintiff believed that the state

---

**2.** HCFA produces a Provider Reimbursement Manual ("PRM") that sets forth its interpretations of its Medicare and Medicaid rules and regulations. The PRM is not promulgated pursuant to notice and comment rulemaking procedures under the Administrative Procedures Act ("APA"), 5 U.S.C. § 553.

Medicaid plan would not cover these claimed amounts, based on MMCS' October 23, 1996, communication. Plaintiff at no time attempted to bill or collect these Part B costs from MMCS or the State. AR at 259, 434. The Intermediary reviewed Plaintiff's cost report and disallowed the bad debts claim on the grounds that the State was obligated to reimburse Plaintiff for the requested amounts under the Medicaid plan and Plaintiff failed to undertake reasonable collection efforts to obtain that payment from the State. AR at 280, 290–99, 433. Plaintiff appealed this decision to the PRRB claiming that the State, through MMCS, refused to reimburse providers for Part B deductibles and coinsurance, and thus, it was unnecessary to first bill the state before claiming the amounts as Medicare bad debts. The PRRB agreed with Plaintiff and reversed the intermediary's disallowance. AR at 37. Subsequently, the Deputy Administrator of HCFA, acting for the Secretary, reviewed the PRRB decision and reinstated the fiscal intermediary's denial of reimbursement. AR at 1–8.

The Deputy Administrator of HCFA relied on PRM § 322 which provides in part "where the state is obligated either by statute or under the terms of its [Medicaid] plan to pay all, or any part, of the Medicare deductible or coinsurance amounts, those amounts are not allowable as bad debts under Medicare." The Secretary contends that Arizona was obligated to pay the deductible and coinsurance portions of Part B services for dual eligibles, and thus, Plaintiff was not entitled to reimbursement for those amounts as Medicare bad debts. Def.Mem. at 14, AR at 7.

Plaintiff appeals the Secretary's determination arguing that (1) the Secretary's decision to deny bad debt reimbursement is contrary to applicable law, (2) the Secretary's decision is not supported by substantial evidence in the administrative rec-

ord, (3) the Secretary impermissibly relied on PRM § 322, a rule that was not properly promulgated pursuant to notice and comment rule making as required by 5 U.S.C. § 553, and (4) the Secretary's decision was arbitrary and capricious. *See* Pl.Mem. at 13. The Secretary responds that pursuant to the Arizona Medicaid program, the state was obligated to pay for Part B deductibles and coinsurance reimbursements for dual eligible enrollees. Defendant further contends that Plaintiff did not undertake reasonable collection efforts because it made no attempt to collect the requested amounts from the State before requesting reimbursement under the Medicare Act for bad debts. Additionally, the Secretary argues that § 322 is an interpretive rule and, therefore, exempt from notice and comment rulemaking.

## DISCUSSION

### A. *Standard of Review*

Summary judgment should be granted pursuant to Federal Rule of Civil Procedure 56 only if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In ruling upon a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bayer v. United States Dep't of Treasury,* 956 F.2d 330, 333 (D.C.Cir.1992). Similarly, in ruling on cross-motions for summary judgment, the court shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed. *See Rhoads v. McFerran,* 517 F.2d 66, 67 (2d Cir.1975); *Long v. Gaines,* 167 F.Supp.2d 75, 85 (D.D.C.2001). Sum-

mary judgment is also appropriate where, as here, review is on the administrative record. *See, e.g., Richards v. INS,* 554 F.2d 1173, 1177 n. 28 (D.C.Cir.1977); *Williams v. Dombeck,* 151 F.Supp.2d 9, 12 (D.D.C.2001).

A provider action requesting judicial review of a final decision by the Secretary is reviewed under the standards set forth in the Administrative Procedures Act ("APA"). *See* 42 U.S.C. § 1395oo(f)(1) (decisions "shall be tried pursuant to the applicable provisions under chapter 7 of title 5, United States Code, 5 U.S.C. §§ 701 *et seq.*"). The APA requires courts to "hold unlawful and set aside agency action, findings, and conclusions found to be ... (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law ... (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute" 5 U.S.C. § 706. Plaintiff claims that the Secretary's decision to disallow its reimbursements for bad debts was contrary to law, arbitrary and capricious and unsupported by substantial evidence in the administrative record.

B. *Notice and Comment Rulemaking*

As an initial matter, Plaintiff argues that PRM § 322, on which the Secretary relies, is a substantive rule and, pursuant to the APA, 5 U.S.C. § 553, and the Medicare Act, 42 U.S.C. § 1395hh(b), it must be promulgated by notice and comment rulemaking. Pl.Mem. at 29, Pl. Opp'n and Reply at 19 n. 6. The Secretary concedes that PRM § 322 did not undergo a notice

and comment rulemaking process, but maintains that the rule is interpretive and, therefore, not subject to the formal rulemaking process. Def.Mem. at 25, *see also* 5 U.S.C. § 553(b)(A) ("this subsection does not apply to interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice.").

■ A substantive rule subject to notice and comment rulemaking "implement[s]" a statute and has the "force and effect of law." *American Mining Cong. v. Mine Safety & Health Admin.,* 995 F.2d 1106, 1112 (D.C.Cir.1993). By contrast, an interpretive rule is "issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers." *Id.* at 1109 (*quoting* Attorney General's Manual on the Administrative Procedures Act); *see also General Motors Corp. v. Ruckelshaus,* 742 F.2d 1561, 1565 (D.C.Cir.1984) ("an interpretive rule simply states what the administrative agency thinks the statute means, and only 'reminds' affected parties of existing duties."). "[T]he legislative or interpretive status of the agency rules turns ... on the prior existence or non-existence of legal duties and rights." *American Mining,* 995 F.2d at 1110. A court must consider whether, without the rule, there is an "adequate legislative basis for ... agency action." *Id.* at 1112. If such a basis exists, the rule is merely interpretive of a pre-existing duty. *Id.* at 1110.[3] This circuit has rejected the "substantial impact" test when distinguishing between substantive and interpretive rules. *See American Postal Workers Union v. United States*

---

**3.** The *American Mining* court framed four questions for a court to consider when determining the status of an agency rule: 1) whether in the absence of a rule there would not be an adequate legislative basis for enforcement action or other agency action to confer benefits or ensure the performance of duties, 2) whether the agency has published the rule in the Code of Federal Regulations, 3) whether the agency has explicitly invoked its general legislative authority, or 4) whether the rule effectively amends a prior legislative rule. *American Mining,* 995 F.2d at 1112. An affirmative answer to any one question indicates that the rule in question is legislative and not interpretive. *Id.*

*Postal Serv.*, 707 F.2d 548, 560 (D.C.Cir. 1983) ("the impact of a rule has no bearing on whether it is legislative or interpretive.").

PRM § 322 states in part that "where the state is obligated either by statute or under the terms of its [Medicaid] plan to pay all, or any part, of the Medicare deductible or coinsurance amounts, those amounts are not allowable as bad debts under Medicare." Plaintiff maintains that this section effectively amends 42 C.F.R. § 413.80(a) which provides that "bad debts attributable to the deductibles and coinsurance amounts are reimbursable under the Program." Pursuant to 42 C.F.R. § 413.80(e), the criteria is set forth that a provider must meet in order to receive such a reimbursement. Plaintiff asserts that nothing in Section 413.80 implies "that a bad debt that satisfies the criteria set forth in § 413.80 will not be reimbursable by Medicare when a state fails and refuses to pay the debt" and that therefore, § 322 is a "supplement to and deviation from 42 C.F.R. § 413.80." Pl.Mem at 29. Plaintiff concludes that § 322 is therefore "without a doubt a legislative rule that must be subject to notice-and-comment." *Id.* Defendant responds that PRM § 322 merely clarifies the criteria of § 413.80(e) and that there was an adequate legislative basis for the Secretary's action without reliance on § 322. Def.Mem at 26 (Secretary could disallow bad debts "based on the mandate of the statute that Medicare pay only 'reasonable costs' and on Plaintiff's failure to satisfy the 'reasonable collection efforts', 'uncollectibility' and 'sound business judgment' requirements of 42 C.F.R. § 413.80(e).").

 This Court concludes that PRM § 322 is an interpretive rule, exempt from notice and comment rulemaking requirements. The PRM has been described as "not binding like law or regulation. Rather, it guides the application of the laws and regulations." *Wilmot Psychiatric v. Shalala*, 11 F.3d 1505, 1507 (9th Cir.1993), *see also Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 100, 115 S.Ct. 1232, 131 L.Ed.2d 106 (1995) (noting that PRM § 233 was an example of an interpretive rule); *Charter Peachford Hospital, Inc. v. Bowen*, 803 F.2d 1541, 1546–47 (11th Cir. 1986) (noting that the PRM is a compilation of interpretive rules). A PRM will require notice and comment rule making only if it adopts a position inconsistent with any of the Secretary's existing regulations. *See Guernsey*, 514 U.S. at 100, 115 S.Ct. 1232. There is nothing in the record to indicate that PRM § 322 is inconsistent with the current regulatory framework promulgated by the Secretary.

Section 413.80(e) states the circumstances in which a provider is entitled to reimbursement for bad debts:

(1) The debt must be related to covered services and derived from deductible and coinsurance amounts.

(2) The provider must be able to establish that reasonable collection efforts were made.

(3) The debt was actually uncollectible when claimed as worthless.

(4) Sound business judgment established that there was no likelihood of recovery at any time in the future.

42 C.F.R. § 413.80(e). This provision does not define "reasonable collection efforts", when "a debt was actually uncollectible" and "sound business judgment." PRM § 322 provides guidance to the public as to how the Secretary will interpret these terms. The provision, does not however, create a new right or duty, rather, it interprets those rights and duties that exist within Section 413.80(c) and the Medicare regulatory structure. Accordingly, this Court finds that § 322 is an interpretive rule and did not necessitate notice and comment rulemaking.

## C. *Contrary to Law*

Plaintiff also argues that the Secretary's decision was contrary to law. Plaintiff argues that it was entitled to reimbursement because 1) it satisfied the criteria set forth in Section 413.80, including the criteria that requires a provider to make reasonable collection efforts, 2) the Secretary's decision is contrary to HCFA's own guidelines, and 3) the Secretary's decision results in impermissible cost shifting. Pl. Mem. at 16, 19, 21; *see also* 42 C.F.R. § 413.80.

### 1. *Reasonable Collection Efforts*

Plaintiff argues that it satisfied the requirements of 42 C.F.R. § 413.80 and, therefore, the Secretary acted contrary to law when he denied Plaintiff's bad debt request. At contention is the issue of whether Plaintiff satisfied 413.80(e)(3) and made "reasonable collection efforts" before claiming uncollectible amounts as bad debts. *See* Pl.Mem at 16–18; Def.Mem at 21–23. Generally, a provider's actions are "reasonable" if it sends bills, collection letters, and makes telephone calls in an attempt to collect a bad debt. *See* PRM § 310. The Secretary has recognized that when dealing with an indigent patient such efforts would likely be futile. PRM § 312, therefore, excuses the provider from undertaking the collection procedures outlined in § 310 when dealing with an indigent patient. § 312 allows a provider to "deem Medicare beneficiaries indigent or medically indigent when such individuals have also been determined eligible for Medicaid as either categorically needy individuals or medically needy individuals respectively." PRM § 312. Plaintiff contends that the bad debts at issue related to services provided to indigent, Medicare/Medicaid dual eligible patients and that, pursuant to § 312, it was unnecessary to undertake collection procedures before claiming those amounts as bad debts. Pl. Mem at 17. Defendant argues that these PRM provisions do not excuse a provider from billing the state for Medicaid amounts, but rather merely excuses a provider from billing the indigent patient for bad debts. Def.Mem. at 22.

Generally, a court must give controlling weight to an agency's rules and regulations containing a reasonable interpretation of an ambiguous statute. *See Chevron U.S.A. Inc. v. Nat'l Res. Def. Council Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). This high level of deference applies only when "Congress delegated authority to the agency generally to make rules carrying the force of law, and ... the agency interpretation claiming deference was promulgated in the exercise of that authority." *United States v. Mead Corp.*, 533 U.S. 218, 226, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001). An agency's informal interpretation of an ambiguous statute "contained in policy statements, agency manuals, and enforcement guidelines" are not entitled to *Chevron* deference. *Mead Corp.*, 533 U.S. at 234, 121 S.Ct. 2164 (2001) (quoting *Christensen v. Harris County*, 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000)). However, an agency's interpretations of statutes and its regulatory scheme "while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort to for guidance" *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944). The persuasive level of an interpretation is determined by "the thoroughness evident in its consideration, the validity of its reasoning, the consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control" *Id.* Additionally, when an agency interprets its own regulation, that interpretation is entitled to a high level of deference if the

regulation is ambiguous. *See Christensen,* 529 U.S. at 588, 120 S.Ct. 1655, *see also Auer v. Robbins,* 519 U.S. 452, 462–63, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997) (holding that an agency's interpretation of its own regulation is entitled to controlling deference).

█ The PRM, as discussed above, contain informal interpretive rules that do not carry the force of law. Therefore, we review the Secretary's interpretations contained in the PRM under the standard set forth by the Supreme Court in *Skidmore.* The reasoning behind PRM § 312 prevents a provider from undertaking collection efforts when such efforts would be largely futile due to a patient's indigence. It further prevents providers from harassing these patients. This reasoning does not apply when a state is the responsible payor under a state Medicaid plan. Requiring a provider to bill a state obligated to cover the costs related to services provided to Medicaid enrollees neither requires the provider to undertake futile collection efforts nor does it implicate concerns of unwarranted harassment. Accordingly, the court is persuaded that the reasoning contained within the Secretary's interpretation of "reasonable collection efforts" as embodied in PRM §§ 310, 312, is both valid and sound.

### 2. Application of PRM § 322

Plaintiff also contends that the Secretary's application of PRM § 322 is inconsistent with HCFA's own guidelines, specifically the exception contained within PRM § 322.[4] Section 322 states that:

> "in some instances, the State has an obligation to pay, but either does not pay anything or pays only part of the deductible or coinsurance because of a State payment 'ceiling' . . . In these situations, any portion of the deductible or coinsurance that the State does not pay that remains unpaid by the patient can be included as a bad debt under Medicare, provided that the requirements of § 312 are met."

PRM § 322. The Secretary contends that this exception applies only when a state "fails to pay for the coinsurance/deductible bad debt because of an established legal payment ceiling set out in governing State law or State plan." Def.Mem. at 20, AR 7. By contrast, Plaintiff reads the section to allow a provider to receive reimbursement for Medicare bad debts when *either* the state has refused to pay *or* that state has refused to pay any part of the reimbursement because of a statutory ceiling on reimbursements. Pl. Opp'n and Reply at 4. Plaintiff states that the phrase "because of a state payment ceiling" applies only to the phrase directly proceeding it; "pays only part of the deductible or coinsurance." *Id.* at 6. Plaintiff cites the "last antecedent doctrine" to support its proposed interpretation of the PRM exception. *Id.; United States v. Pritchett,* 470 F.2d 455, 459 (D.C.Cir.1972) (finding that "ordinarily, qualifying phrases are to be applied to the words or phrase immediately preceding and are not to be construed as extending

---

4. Plaintiff also argues that PRM § 1102.3 is inconsistent with the Secretary's final decision. Section 1102.3 states that "it may not be necessary for a provider to actually bill the Medicaid program to establish a crossover bad debt *where the provider can establish that Medicaid is not responsible for payment.* In lieu of billing the Medicaid program, the provider must furnish documentation of Medicaid eligibility at the time services were rendered . . ., and non-payment that would have occurred if the crossover claim had actually been filed with Medicaid." PRM § 1102.3 (emphasis added). Defendant correctly asserts that Plaintiff was unable to establish that "Medicaid is not responsible for payment." Def.Mem at 20–21. Arizona's state plan obligated the state to pay Part B deductible amounts and, thus, Section 1102.3 does not support Plaintiff's argument.

to others more remote."); *but see District 6, United Mine Workers of America v. U.S. Dep't of Interior*, 562 F.2d 1260, 1264–65 (D.C.Cir.1977) (finding last antecedent rule inapplicable where the qualifying phrase was ambiguous and could modify either the preceding short clause or the preceding main clause).

Both Plaintiff and Defendant posit plausible interpretations of the § 322 exception and its application to Section 413.80. As discussed above the court may look to the Secretary's informal interpretations for guidance. *See American Fed'n. of Gov't Employees v. Veneman*, 284 F.3d 125, 129–30 (D.C.Cir.2002) (explaining that the reasoned judgment of a federal agency charged with administering a complex statutory scheme may be used by the court as guidance); *Psychiatric Inst. of Washington, D.C., Inc. v. Schweiker*, 669 F.2d 812, 813–814 (D.C.Cir.1981) (noting that "where the decision under review involves an agency's interpretation of its own regulations, forming part of a complex statutory scheme which the agency is charged with administering, the arguments for deference to administrative expertise are at their strongest."). Generally, a court is not permitted to "reverse an agency decision merely because it failed to rely on any one of a number of canons of [statutory] construction that might have shaded the interpretation a few degrees in one direction or another." *Michigan Citizens for an Indep. Press v. Thornburgh*, 868 F.2d 1285, 1292 (D.C.Cir.1989), *aff'd by equally divided court*, 493 U.S. 38, 110 S.Ct. 398, 107 L.Ed.2d 277 (1989).

The Court concludes that the Secretary's interpretation of Section 413.80 as explained in PRM § 322 is persuasive in this instance. To adopt the interpretation suggested by Plaintiff could have serious implications for the federal-state division of financial responsibility in the Medicaid Program. Under Plaintiff's reading of § 322, a provider may claim bad debt reimbursement from the federal Medicare program whenever the state program is obligated to pay, but, for whatever reason, chooses not to meet this obligation. Pl. Mem at 5. A state failing to meet its responsibility under its Medicaid plan could pass its costs onto the federal government, thereby undermining the federal/state cost sharing system the Medicaid Act envisioned. A state is not required to participate in the Medicaid system, but if it chooses to do so, it is required to "comply with the requirements of Title XIX." *Harris v. McRae*, 448 U.S. 297, 301, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980), and it may not pick and chose which obligations to keep and which obligations to ignore. *See also Atkins v. Rivera*, 477 U.S. 154, 157, 106 S.Ct. 2456, 91 L.Ed.2d 131 (1986) ("Federal Government shares cost of Medicaid with states that elect to participate in program, and, in return, participating states are to comply with requirements imposed by Medicaid statutes and by Secretary.").

### 3. *State Obligation to Pay*

Plaintiff also argues that even if this Court accepts the Secretary's reading of PRM § 322 and its application to Section 413.80, the Secretary has not demonstrated that the state was in fact obligated to pay for Part B deductible and coinsurance amounts. Pl. Opp'n and Reply at 12–15. Plaintiff states that "AHCCCS acknowledges its Medicaid program is liable under the state plan but 'neither the State of Arizona nor the program contractor, despite improperly denying Village Green's claim, ever paid the coinsurance and deductible to Village Green for the year at issue.'" Cplt ¶ 42, (quoting PRRB Decision, AR 37), *see also* Pl. Opp'n and Reply at 8 ("the state, by the conduct of its authorized contractors, did not accept any such obligation with respect to the Medicare bad debts at issue."). Plaintiff misun-

derstands the application of PRM § 322. Section 322 does not apply only to situations where a state chooses to accept its obligation, but applies where the state has an obligation under its state plan or state laws. As discussed above, to permit the Plaintiff's reading of the PRM section, would allow states to unfairly pass their costs on to the federal Medicare plan. Plaintiff's Complaint acknowledges that the state had an obligation to pay the Part B deductible and coinsurance costs for dual eligibles. *See* Cplt. ¶¶ 42, 55.[5] The argument posited by the Plaintiff that a state ignoring its responsibilities under its plan is not "obligated" to pay is untenable. Pl. Opp'n and Reply at 12. The evidence on the record provides ample support for the Secretary's finding that the State was obligated to pay the costs of Part B deductibles and coinsurance.

### 4. *Cost Shifting*

Finally, Plaintiff argues that the Secretary's denial of payment was contrary to the cost shifting prohibitions contained in the Medicare Act. *See* 42 U.S.C. § 1395x(v)(1)(A)(i) (the Secretary shall "take into account both direct and indirect costs of providers of services ... in order that, under the methods of determining costs, the necessary costs of efficiently delivering covered services to individuals covered by the insurance programs established by this title will not be borne by individuals not so covered ...."). Plaintiff maintains that the bad debts at issue pertain to Medicare services provided by

Plaintiff and that if Village Green does not receive reimbursement the costs will necessarily be passed on to non-Medicare patients. Pl.Mem. at 22–23. Plaintiff contends that the Secretary's interpretation of § 413.80 and PRM § 322 leads to a result that is inconsistent with the express purposes of the Act. *Id.* at 23.

As the Court noted above, Plaintiff's interpretation of § 413.80 would lead to an impermissible cost shifting between the State Medicaid program and Federal Medicare program. The Secretary has balanced the "need to protect the Medicare Trust fund by ensuring that reasonable program protections for reimbursement of otherwise allowable bad debts, including the reasonable collection efforts requirements are enforced." Def.Mem. at 32. The Secretary has the authority to balance competing concerns of the Medicare Act and the Court does not find that the Secretary has acted contrary to law.

### D. *Substantial Evidence*

Plaintiff also argues that the Secretary's decision is not supported by the evidence in the record. Pl.Mem. at 23–27. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolo v. Federal Maritime Comm'n,* 383 U.S. 607, 619–20, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938)) Because this standard is "something less than the weight of the

---

**5.** Plaintiff's argument that it is unclear that, in 1994, the state was obligated to pay Part B costs under the state law or state plan is without merit. *See* Pl. Opp'n and Reply at 12–15. Arizona's Medicaid Plan in force in 1994, as evidenced in Arizona Administrative Code §§ R9–29–302, R9–29–301 ("a person determined dual eligible shall be entitled to the following benefits and services: (2) payment of Medicare Part B premiums, coinsur-

ance, and deductibles"), and R9–29–402 ("Program contractors and other providers shall be responsible for providing the covered services specified in R9–29–302 to dual eligible and enrolled members in accordance with the provisions specified in A.A.C. Title 9, Chapter 28."), clearly obligated the State, through its program contractors, to pay for Part B deductible amounts.

evidence, ... the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Id.*

Plaintiff claims that the Secretary disregarded evidence that demonstrated that the state, through MMCS, refused to undertake its responsibility to reimburse providers for Part B deductibles and coinsurance payments. *Id.* at 24. Furthermore, the evidence in the record revealed that the Plaintiff believed it was prohibited by contract from billing MMCS, ALTCS or AHCCCS for the Part B deductibles and coinsurance payments. *Id.* Plaintiff further points to the evidence in the record that the Arizona Medicaid program has never paid the Part B claimed amounts. *Id.* at 27.

The Secretary does not dispute the fact that the state of Arizona has not paid Plaintiff for the claimed 1994 costs. Def. Mem. at 27. The Secretary additionally acknowledges the fact that Plaintiff believed that MMCS would not pay for Part B services. *Id.* at 28. After considering this information, the Secretary determined that, although the state has not yet paid for the Part B services, the state was obligated to pay under its state Medicaid plan and thus Section 413.80 and PRM § 322 prohibited the Plaintiff from collecting the bad debt reimbursement amounts. AR at 1–8. The Secretary determined that the Plaintiff never attempted to bill MMCS, AHCCCS, or ALTCS for the bad debt amount and never attempted to institute any grievance proceedings against the MMCS or the state agencies for failing to act as required under the State plan. *Id.* at 28–29, AR at 1–8. Furthermore, the Secretary considered evidence that the contract between MMCS and Plaintiff was subject to Arizona law and, therefore, the Plaintiff's contract with MMCS did not nullify the state's obligation to pay for

Part B deductibles and coinsurance. *Id.* Based on the review of the administrative record, the Court does not find that the Secretary's decision was unsupported by substantial evidence. The evidence contained within the Administrative Record supports the findings of the HCFA Deputy Administrator (acting on behalf of the Secretary), and accordingly, the Court will not disturb that finding.

### E. *Arbitrary & Capricious*

"The scope of review under the 'arbitrary and capricious standard' is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). Applying this deferential standard, a federal court must uphold an agency's decision if the agency demonstrates that it has "examined the relevant data and articulated a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.' " *State Farm,* 463 U.S. at 43, 103 S.Ct. 2856 (quoting *Burlington Truck Lines v. United States,* 371 U.S. 156, 168, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962)).

Nothing in the administrative record indicates that the Secretary acted arbitrarily in its decision to deny Plaintiff's claim for bad debt reimbursement. There is a "rational connection" between the determination made by the Secretary and the facts in the record and this Court concludes that the Secretary's decision was not arbitrary or capricious.

### CONCLUSION

Based on the foregoing, the Court shall grant Defendant's motion for summary judgment, and shall deny Plaintiff's motion for summary judgment. Defendant has demonstrated that the decision to deny

Plaintiff's reimbursement request for Part B bad debts was supported by substantial evidence, not arbitrary or capricious and not contrary to law. Further, the Secretary properly issued PRM § 322 as an interpretive agency rule.