Justice BREYER, dissenting.
The statute before us, a subsection of the Medicare Act, refers to a "rule, requirement, or other statement of policy ... that establishes or changes a substantive legal standard." 42 U.S.C. § 1395hh(a)(2). This phrase is nested within a set of provisions that, taken together, require the Secretary of Health and Human Services to use notice-and-comment rulemaking before promulgating "regulations."
The Government argues that the language at issue, like the notice-and-comment provisions of the Administrative Procedure Act (APA), applies only to "substantive" or "legislative" rules. In its view, the language does not cover "interpretive" rules (which it believes the agency promulgated here). After considering the relevant language, the statutory context, the statutory history, and the related consequences, I believe the Government is right. I would remand this case to the Court of Appeals to consider whether the agency determination at issue in this case is a substantive rule (which requires notice and comment) or an interpretive rule (which does not).
I
The arguments in support of my interpretation are simple. By using words with meanings that are well settled in the APA context, Congress made clear that the notice-and-comment requirement in the Medicare Act applies only to substantive, not interpretive, rules. The statutory language, at minimum, permits this interpretation, and the statute's history and the practical consequences provide further evidence that Congress had only substantive rules in mind. Importantly, this interpretation of the statute, unlike the Court's, provides a familiar and readily administrable way for the agency to distinguish the actions that require notice and comment from the actions that do not.
A
I begin with the specific language of the statute. There are, in my view, three relevant subsections that must be read together. The first, a general provision, has been part of the Medicare Act since Congress created the program in 1965. It says that the Secretary "shall prescribe such regulations as may be necessary to carry out the administration of the insurance programs." 42 U.S.C. § 1395hh(a)(1) (emphasis added).
*1818 The other two relevant provisions were added in the 1980s. The provision contained in the very next paragraph is the one directly at issue here. It says:
"No rule, requirement, or other statement of policy ... that establishes or changes a substantive legal standard governing the scope of benefits, the payment for services, or the eligibility ... to furnish or receive services or benefits ... shall take effect unless it is promulgated by the Secretary by regulation under paragraph (1)." § 1395hh(a)(2) (emphasis added).
And the third relevant provision, eight paragraphs away, contains the notice-and-comment requirement:
"[B]efore issuing in final form any regulation under subsection (a) ..., the Secretary shall provide for notice of the proposed regulation in the Federal Register and a period of not less than 60 days for public comment thereon." § 1395hh(b)(1) (emphasis added).
Taken together, these provisions say that the Secretary must use notice-and-comment procedures before promulgating any "regulation," and that a "rule, requirement, or other statement of policy" counts as a "regulation" whenever it "establishes or changes a substantive legal standard."
The question at hand is whether an interpretive rule qualifies as the type of "regulation" that Congress intended to subject to the notice-and-comment requirement when it added the second and third provisions in the 1980s. In my view, the answer is no.
In the 1980s, the words "regulation" and "substantive" (which I have repeatedly italicized above) carried a special meaning in the context of administrative law. This Court had recognized the "central distinction" drawn by the APA between " 'substantive rules' on the one hand and 'interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice' on the other." Chrysler Corp. v. Brown , 441 U.S. 281, 301, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979). A "substantive rule," often promulgated pursuant to specific statutory authority, is a rule that " 'bind[s]' " the public or has " 'the force and effect of law.' " Id. , at 301-302, 99 S.Ct. 1705. Substantive rules had also come to be known as "legislative rules." Id., at 302, 99 S.Ct. 1705. And some courts referred to substantive rules as "regulations" as well, see, e.g., American Hospital Assn. v. Bowen , 834 F. 2d 1037, 1045 (CADC 1987) (" ' "regulations," "substantive rules," or "legislative rules" are those which create law' "); Cabais v. Egger , 690 F. 2d 234, 238 (CADC 1982) (same), although this practice was both less common and less consistent.
By way of contrast, courts had held that "interpretive rules" do not have the "force and effect of law"; they simply set forth the agency's interpretation of the statutes or regulations that it administers. Chrysler Corp., 441 U.S. at 302, and n. 31, 99 S.Ct. 1705 ; see also American Hospital Assn. , 834 F. 2d at 1045 (interpretive rules "merely clarify or explain existing law or regulations"). Then, as today, whether a rule was substantive or interpretive determined whether it had to be promulgated using the APA's notice-and-comment rulemaking procedures. 5 U.S.C. § 553(b)(3)(A) (exempting "interpretative rules," among other things, from the notice-and-comment requirement); see also Shalala v. Guernsey Memorial Hospital , 514 U.S. 87, 99, 115 S.Ct. 1232, 131 L.Ed.2d 106 (1995) ("Interpretive rules do not require notice and comment").
At this point, we can begin to see support in the statutory language for the Government's interpretation of the notice-and-comment provisions-one that excludes interpretive *1819 rules from their scope. By applying the statute only to agency actions that "establish or change a substantive legal standard ," § 1395hh(a)(2) (emphasis added), Congress used words that courts had long used to describe substantive rules under the APA. See, e.g., American Hospital Assn. , 834 F. 2d at 1045, 1046 (" 'substantive rules' " are rules that " 'create law' " or " 'establis[h] a standard of conduct which has the force of law' "); Linoz v. Heckler , 800 F. 2d 871, 877 (CA9 1986) (substantive rules " 'effect a change in existing law or policy' "). Moreover, by limiting the notice-and-comment requirement to "regulation [s ]," § 1395hh(b)(1) (emphasis added), Congress used a word that courts had sometimes treated as interchangeable with the term "substantive rules."
Another subsection of the statute, § 1395hh(e)(1), similarly implies that Congress had only substantive rules in mind when it used the term "regulations." That subsection bars the agency from retroactively applying certain policy changes articulated in "regulations, manual instructions, interpretative rules, statements of policy, or guidelines of general applicability." Ibid. By using the word "or" to connect "regulations" and the other words in the list, Congress suggested that each linked phrase refers to something different. This textual distinction between "regulations" and "interpretive rules" further suggests that the "regulations" that must go through notice and comment do not include interpretive rules.
There is, however, an important counterargument. As the Court emphasizes, ante, at ---- - ----, the provision before us includes the words "statement[s] of policy." § 1395hh(a)(2). Even if we can easily read the words "rule[s]" and "requirement[s]" as referring to substantive or legislative rules, "statement[s] of policy" are a different matter. Ibid. Indeed, the APA explicitly excludes "statements of policy" from its notice-and-comment requirements. 5 U.S.C. § 553(d)(2). So how can we say that our provision-which explicitly includes statements of policy-encompasses only those legislative rules that the APA subjects to notice-and-comment rulemaking?
The answer to this question linguistically is that our provision does not include all "statements of policy," but rather only those that are, in effect, substantive rules. That is because the statute does not "just refe[r] to 'statements of policy' ", ante, at ----; it refers to "statement[s] of policy ... that establis [h ] or chang [e ] a substantive legal standard ," § 1395hh(a)(2) (emphasis added). Those words, read together, are simply another way of referring to substantive rules in disguise. This reading may seem odd at first blush, but the statutory history and the consequences of the alternative interpretation persuade me that this is precisely what Congress intended.
B
I turn next to the history of the statute, which provides significant support for believing that the Medicare rulemaking provision does not extend to interpretive rules. As enacted in 1965, the Medicare Act authorized the agency to promulgate "regulations" as necessary, but did not require the agency to follow any particular rulemaking procedures. See § 102(a), 79 Stat. 331. The APA's notice-and-comment requirements did not apply to Medicare regulations, for the APA specifically exempts "matter[s] relating to ... benefits" from its scope. 5 U.S.C. § 553(a)(2).
In 1971, the agency nonetheless adopted a policy of voluntarily promulgating most regulations through notice-and-comment rulemaking. See *1820 Public Participation in Rule Making, 36 Fed. Reg. 2532. But the agency did not use notice and comment for all policy decisions during this time. It also provided extensive guidance to participants in the Medicare system through less formal means like manuals (a practice it still follows today). See, e.g. , Daughters of Miriam Ctr. for the Aged v. Mathews , 590 F. 2d 1250, 1254 (CA3 1978) (describing the agency's Provider Reimbursement Manual, which "interprets and elaborates upon" Medicare regulations).
In the early 1980s, the agency proposed to change its notice-and-comment policy: It no longer intended to use notice and comment when the disadvantages of doing so "outweigh[ed] the benefits of receiving public comment." Administrative Practice and Procedures, 47 Fed. Reg. 26860 (1982). This announcement provoked widespread opposition. Citizens' groups and others asked Congress to "make it clear, by statute , that Medicare regulations ... should be subject to" the APA. Medicare Appeals Provisions: Hearing on S. 1158 before the Subcommittee on Health of the Senate Committee on Finance, 99th Cong., 1st Sess., 62 (1985). In 1986, Congress responded to these requests by enacting a provision that required public notice and a 60-day comment period for "any regulation," with a few exceptions. See 42 U.S.C. § 1395hh (1982 ed., Supp. IV) ; § 9321(e)(1), 100 Stat. 2017.
Congress meant the term "regulation" to include only substantive or legislative rules. As I have said, supra, at ----, at the time Congress wrote the notice-and-comment provision in the 1980s, courts sometimes used all three terms interchangeably. See, e.g., Cabais , 690 F. 2d at 238. And the legislative history confirms that Congress expected the APA principles to apply. The House-Senate Conference Report stated that the 1986 notice-and-comment provision would not require rulemaking for "items (such as interpretive rules, general statements of policy, or rules of agency organization, procedure or practice) that are not currently subject to that requirement." H.R. Conf. Rep. No. 99-1012, p. 311.
As of 1986, then, it was clear that the Medicare Act required notice-and-comment rulemaking only for substantive rules, not for interpretive rules. That was true even though the Medicare Act did not expressly cross-reference the APA's exception for interpretive rules. Instead, Congress simply understood that the statutory term "regulation" excluded interpretive rules, statements of policy, and the like.
Now I shall turn to the subsection before us, a provision enacted one year later. Did that provision, enacted in 1987, significantly change the scope of the Medicare Act's notice-and-comment requirement? The House of Representatives passed a version of the provision that seemed to say yes. The House Report on that bill said that the provision arose from a "concer[n] that important policies [were] being developed without benefit of the public notice and comment period and, with growing frequency, [were] being transmitted, if at all, through manual instructions and other informal means." H.R. Rep. No. 100-391, pt. 1, p. 430 (emphasis added). Thus, the House bill required notice and comment for any "rule, requirement, or other statement of policy ... that has (or may have) a significant effect on the scope of benefits, the payment for services, or the eligibility" for benefits or services. H.R. 3545, 100th Cong., 1st Sess., § 4073(a)(2) (1987), 133 Cong. Rec. 30019.
The Senate, however, thought the scope of this language was too broad. And the House-Senate Conference Committee agreed with the Senate, not the House. It revised the House version by taking out *1821 the words "has (or may have) a significant effect on the scope of" benefits, payment, or eligibility, and by substituting for those words the current language-namely, "establishes or changes a substantive legal standard governing the scope of" benefits, payment, or eligibility. § 1395hh(a)(2) (emphasis added); see § 4035(b), 101 Stat. 1330-78 (1987); H.R. Conf. Rep. No. 100-495, p. 566 (1987). The revised language thus focused on the legal effect of the agency decision, not its practical importance.
The Conference Report explains that the Committee substituted its language for that of the House in order to "reflec[t] recent court rulings." Ibid. What were those "court rulings"? I have described many of them above. See supra, at ---- - ----. Among others, they included rulings describing "substantive rules" as rules that " 'establis[h] a standard of conduct which has the force of law' " or that change "substantive standards." American Hospital Assn. , 834 F. 2d at 1046, 1056. Given this case law, it is almost a certainty that the Conference Committee had in mind the meaning that courts had already given to the term "substantive"; indeed, neither the Court nor the hospitals point to any other recent rulings to which the Report could have referred. And if that is correct, Congress would not have intended to include interpretive rules within the scope of the revised provision.
Then-recent court rulings also explain why Congress added the words "statement of policy," given its desire to mimic the scope of the APA's rulemaking provision. At the time Congress added this language in 1987, the D. C. Circuit had recently described it as "well established that a court, in determining whether notice and comment procedures apply to an agency action, will consider the agency's own characterization of the particular action." Telecommunications Research and Action Ctr. v. FCC , 800 F. 2d 1181, 1186 (1986) ; see also United Technologies Corp. v. EPA , 821 F. 2d 714, 718 (CADC 1987) ("[T]he agency's characterization of a rule is 'relevant' "). And in practice, courts appeared to give the agency's characterization at least some weight. See Telecommunications , 800 F. 2d at 1186 (finding "no reason to question the Commission's characterization" of the challenged action as a "policy statement"); General Motors Corp. v. Ruckelshaus , 742 F. 2d 1561, 1565 (CADC 1984) (en banc) (finding a rule exempt from notice and comment in part because "the agency regarded its rule as interpretative"). These cases thus reinforce the likelihood that Congress inserted the words "statement of policy" to make clear that the agency could not evade the notice-and-comment obligation simply by calling a substantive rule a "statement of policy." In deciding whether a particular agency action is (or is not) a substantive rule, it is the substantive legal effect that will matter, not the label.
In short, the statute's history provides considerable evidence that Congress intended to replicate the APA framework. Nowhere in this history is there any indication that Congress intended to require notice and comment for a broader category than substantive rules.
C
The third-and perhaps strongest-reason for believing that Congress intended this interpretation is a practical reason. Medicare is a massive federal program, "embodied in hundreds of pages of statutes and thousands of pages of often interrelated regulations." Shalala v. Illinois Council on Long Term Care, Inc. , 529 U.S. 1, 13, 120 S.Ct. 1084, 146 L.Ed.2d 1 (2000). To help participants navigate the statutory and regulatory scheme, the *1822 agency has issued tens of thousands of pages of manual instructions, interpretive rules, and other guidance documents. And it has followed this practice since well before Congress enacted the notice-and-comment provisions at issue here. See supra, at ----.
This combination of regulations and informal guidance is, we have said, "a sensible structure for the complex Medicare reimbursement process." Guernsey Memorial Hospital , 514 U.S. at 101, 115 S.Ct. 1232. Notice-and-comment procedures are elaborate and take time to complete. The Government cites a study showing that notice-and-comment rulemakings take an average of four years to complete. Pet. for Cert. 20 (citing GAO, D. Fantone, Federal Rulemaking 5, 19 (GAO-09-205, 2009)).
To imagine that Congress wanted the agency to use those procedures in respect to a large percentage of its Medicare guidance manuals is to believe that Congress intended to enact what could become a major roadblock to the implementation of the Medicare program. As the Government warns us, the Court of Appeals' interpretation may "substantially undermine" and even "cripple" the administration of the Medicare scheme. See Brief for Petitioner 21, 42. To illustrate this point, consider the following provisions of the Medicare Provider Reimbursement Manual, which the agency has published for decades. All of these provisions were held by courts to be "interpretive rules," and hence not subject-before today-to the statute's notice-and-comment requirements:
• Provisions governing when provider contributions to employee deferred compensation plans are necessary and proper and therefore reimbursable. Visiting Nurse Assn. Gregoria Auffant, Inc. v. Thompson , 447 F. 3d 68, 76-77 (CA1 2006).
• Provisions governing exceptions to the per diem cost limits that the Secretary can authorize in respect to routine extended care service costs. St. Francis Health Care Centre v. Shalala , 205 F. 3d 937, 940-943, 947 (CA6 2000).
• A provision governing whether certain hospital costs should be classified as "routine" or "ancillary." National Med. Enterprises, Inc. v. Shalala , 43 F. 3d 691, 694 (CADC 1995).
• A provision governing whether borrowing is considered "necessary" when the provider has funds in its funded depreciation account that are not committed by contract to a capital purpose. Sentara-Hampton Gen. Hospital v. Sullivan , 980 F. 2d 749, 751, 756-760 (CADC 1992).
• A provision restricting the type of financial arrangements for which hospitals can recover reimbursement for on-call emergency room physicians. Samaritan Health Serv. v. Bowen , 811 F. 2d 1524, 1525, 1529 (CADC 1987).
• A provision regarding the recapture of excess reimbursements resulting from a provider depreciating its assets using an accelerated method. Daughters of Miriam Ctr. , 590 F. 2d at 1254-1255.
• A provision governing whether providers are entitled to reimbursement for bad debts when States are obligated to pay those debts under Medicaid. GCI Health Care Ctrs., Inc. v. Thompson , 209 F. Supp. 2d 63, 68-69 (DDC 2002).
• A provision disallowing reimbursement of stock maintenance costs.
*1823 American Medical Int'l, Inc. v. Secretary of Health, Education and Welfare , 466 F. Supp. 605, 615-616 (DDC 1979).
These examples all involve provisions of the Provider Reimbursement Manual, but the agency also publishes more than a dozen other manuals, with tens of thousands of additional pages of instructions governing "the scope of benefits, the payment for services, [and] the eligibility" for benefits or services. § 1395hh(a)(2). These include the Medicare General Information, Eligibility and Entitlement Manual; the Medicare Claims Processing Manual; the Medicare Benefit Policy Manual; the Medicare Secondary Payer Manual; the Medicare Program Integrity Manual; the Medicare Prescription Drug Benefit Manual; and many others. Many provisions of these manuals have been deemed interpretive rules as well. See, e.g., Erringer v. Thompson , 371 F. 3d 625, 632 (CA9 2004) (provisions of Program Integrity Manual governing contractors' creation of local coverage determinations); Linoz , 800 F. 2d at 876-878 (provision of Carrier's Manual carving out an exception to the rule governing reimbursement for ambulance service).
Is it reasonable to believe that Congress intended to impose notice-and-comment requirements upon all, or most, or even many of these rules, requirements, or statements of policy? See ante, at ----. In my view, the answer is clearly no. Yet the Court's opinion might impose this unnecessary and potentially severe burden on the administration of the Medicare scheme.
D
Finally, interpreting the statute as replicating the APA has the added virtues of clarity and stability. We know that Congress could not have meant to require notice-and-comment rulemaking for all agency actions that could conceivably affect substantive Medicare policy. So there must be a way to distinguish the "substantive" rules that are covered from the "substantive" rules that are not. And the APA's notion of a "substantive rule" provides a natural, legally understandable, and customary way for judges, agencies, and lawyers to perform that task. In that sense, the APA offers us a familiar port in an interpretive storm.
The Court not only leaves the APA behind; it fails to substitute any reasonably clear alternative standard. How is the agency to determine whether a rule "establishes or changes a substantive legal standard"? At one point, the Court refers to the hospitals' view that the statute applies to agency actions "that 'creat[e] duties, rights and obligations,' as distinct from [agency actions] that specif[y] how those duties, rights, and obligations should be enforced." Ante, at ----. But it later declines to "go so far as" to fully endorse that view. Ante, at ----.
At another point, the Court refers to the notice-and-comment requirement as applying to "avowedly 'gap'-filling polic[ies]," suggesting the case might be different if the Government had argued that "the statute itself" "supplie[d] the controlling legal standard." Ante , at ---- - ----. But these statements sound as if the Court is embracing the very interpretive-rule exception that its holding denies. See, e.g. , Hemp Industries Assn. v. DEA , 333 F. 3d 1082, 1087 (CA9 2003) (interpretive rules "merely explain, but do not add to, the substantive law that already exists in the form of a statute"); American Hospital Assn. , 834 F. 2d at 1046 (agency action is interpretive where it "merely reminds parties of existing duties" under a statute); cf. Clarian Health West, LLC v. Hargan , 878 F. 3d 346, 355-356 (CADC 2017) (concluding, after the decision below, that manual instructions governing reconciliation of outlier payments did not require notice *1824 and comment because they did not "bind" the agency and because existing statutory and regulatory provisions "establish[ed the] substantive legal standards"). If the Court is going to effectively exempt interpretive rules from the notice-and-comment requirement, why not simply say so?
Nor does the Court's resolution of this particular case offer clarity as to the scope of the statute. The Court holds that the agency must provide notice and comment before including Medicare Part C patients in the Medicare fraction. But it does not explain why that agency decision "establishes or changes a substantive legal standard." Is it because the decision "affects a hospital's right to payment"? Ante, at ----. Is it because the decision's financial impact is "considerabl[e]"? Ante, at ---- - ----. Is it because the agency had previously sought to adopt the same policy through notice and comment? Ante, at ----. The Court does not say.
This lack of explanation aggravates the potential burden that the Court's opinion already imposes upon the Medicare program. It may also lead to legal challenges to the validity of interpretive rules (or even procedural rules) previously thought to have been settled. And it will thereby increase the confusion that is inevitable once the Court rejects the settled and readily available principles that courts have learned to use to identify substantive rules under the APA. These potential adverse consequences are, in my view, persuasive evidence that Congress did not intend the statute to be construed in this way.
To consider these consequences in no way invades Congress' constitutional authority to "weigh the costs and benefits of different approaches and make the necessary policy judgment." Ante, at ----. Congress exercised that authority when it passed the Medicare Act's notice-and-comment provisions. But it used language that even the Court describes as "enigmatic," ante, at ----, and our role as judges is to decipher that enigma. Examining the potential consequences of each competing interpretation helps us perform that task, as we can presume that Congress did not intend to produce irrational or undesirable practical consequences. See Kirtsaeng v. John Wiley & Sons, Inc. , 568 U.S. 519, 538, 544-545, 133 S.Ct. 1351, 185 L.Ed.2d 392 (2013) (concluding that Congress did not intend an interpretation of the copyright statute that would produce serious and extensive "practical problems"); cf. Home Depot U.S. A., Inc.v.Jackson , --- U.S. ----, ante, at ----, --- S.Ct. ----, ----, --- L.Ed.2d ----, 2019 WL 2257158 (ALITO, J., dissenting) (slip op., at 8) ("[A] good interpreter also reads a text charitably, not lightly ascribing irrationality to its author").
II
The reasons set forth above provide sufficient grounds to believe that Congress only intended to require notice and comment for substantive rules. The Court nonetheless concludes that three "textual clues" foreclose this interpretation. Ante, at ---- - ----. I have already mentioned one of them: Congress' use of the words "statement of policy" in the provision before us. As I have explained, the most plausible explanation for this language is that Congress sought to make clear that the agency must use notice and comment for any agency pronouncement that amounts to a substantive rule-irrespective of the label that the agency applies. See supra , at ---- - ----.
The remaining two arguments that the Court offers to defend its interpretation are, in my view, similarly inadequate. The Court points, for example, to § 1395hh(e)(1), which Congress added in *1825 2003. See § 903(a)(1), 117 Stat. 2376. That subsection limits the agency's authority to make retroactive any "substantive change" in "regulations, manual instructions, interpretative rules, statements of policy, or guidelines of general applicability." The Court points out that the word "substantive" in this subsection does not mean a "substantive rule" under the APA. Ante , at ---- - ----. And I agree with that observation. But I cannot see how that fact sheds light on the meaning of the phrase "establishes or changes a substantive legal standard ," where the adjective "substantive" modifies an entirely different noun.
We of course normally presume that the same word carries a single meaning throughout a given statute. Here, however, that presumption is overcome. The word "substantive" in § 1395hh(e)(1) modifies the word "change," and the phrase "substantive change" has a known meaning in the law. It refers to a change to the substance of a rule, rather than a technical change to its form. See, e.g., Northwest, Inc. v. Ginsberg , 572 U.S. 273, 282, 134 S.Ct. 1422, 188 L.Ed.2d 538 (2014) (noting that statutory recodification "did not effect any 'substantive change' " to the law); see also Black's Law Dictionary 1469 (8th ed. 2004) (defining "substance" as, inter alia , "the essential quality of something, as opposed to its mere form " (emphasis added)). Thus, § 1395hh(e)(1) simply says that the agency cannot retroactively apply nontechnical changes made to policies articulated in "regulations, manual instructions, interpretative rules, statements of policy, or guidelines of general applicability." The provision before us deals with an entirely different subject, namely, the use of notice-and-comment procedures. And the word "substantive" in this context has a different and significantly narrower scope.
The Court also points to the fact that the Medicare Act cross-references the APA's good-cause exception. Had Congress wanted to pick up the APA's exclusion of interpretive rules, the Court says, it could simply have cross-referenced the APA's interpretive-rule exception as well. Ante, at ---- - ----. As a practical matter, the legislative history suggests that the absence of a cross-reference is a particularly unreliable guide to congressional intent in this case. The initial version of the bill passed by the House of Representatives unambiguously sought to broaden the scope of the APA. See supra, at ---- - ----. Rather than starting anew, the Conference Committee retained some of the language from the House's version but revised it to reflect the APA's notion of a substantive rule. See ibid.
Even putting the drafting history aside, there are many reasons why Congress might have chosen to spell out the governing standard rather than rest upon an explicit cross-reference to a portion of the APA. Section 1395hh(a)(2), for example, reflects Congress' judgment that rulemaking is necessary only for a certain subset of substantive rules-namely, those governing "the scope of benefits, the payment for services, or the eligibility" for benefits or services. A simple cross-reference to the APA's interpretive-rule exception would not have adequately captured this judgment. The APA's exception would have exempted interpretive rules, but Congress also wanted to exempt those substantive rules that do not govern benefits, payment, or eligibility. True, Congress could have produced the same result by first amending the statute to require notice-and-comment for any regulation governing benefits, payment, or eligibility and then cross-referencing the interpretive-rule exception. But the language of § 1395hh(a)(2) accomplishes both of those tasks at once. And even were that not so, there is no rule requiring Congress to use cross-references. As I have explained, the Medicare *1826 Act's notice-and-comment provisions already operate by way of three cross-linked subsections. See supra , at ---- - ----. Given the complexity of this scheme, I would not second-guess Congress' decision not to add yet another cross-reference here.
* * *
Given the statute's context, its language, its history, and related practical consequences, I believe that Congress intended the provision before us to apply to all substantive rules, irrespective of the labels that the agency affixed. Congress did not, however, intend the provision to require notice and comment for interpretive rules that, by definition, lack the force and effect of law. I fear that the Court, in rejecting this interpretation, has improperly (and needlessly) "ignore[d] persuasive evidence of Congress' actual purpose." West Virginia Univ. Hospitals, Inc. v. Casey , 499 U.S. 83, 115, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991) (Stevens, J., dissenting); cf. Johnson v. United States , 163 F. 30, 32 (CA1 1908) (Holmes, J.) ("[I]t is not an adequate discharge of duty for courts to say: We see what you are driving at, but you have not said it, and therefore we shall go on as before").
If I am right, and if the Court's opinion will cause serious confusion or delay, Congress can, through legislation, fix the Court's mistake. "But legislative action takes time; Congress has much to do; and other matters ... may warrant higher legislative priority." Milner v. Department of Navy , 562 U.S. 562, 592, 131 S.Ct. 1259, 179 L.Ed.2d 268 (2011) (BREYER, J., dissenting). Rather than requiring Congress to "revisit the matter" and "restate its purpose in more precise English," Casey , 499 U.S. at 115, 111 S.Ct. 1138 (Stevens, J., dissenting), I would hold that the Medicare Act only requires notice and comment for what this Court has traditionally considered to be substantive rules. I would remand for the Court of Appeals to decide in the first instance whether the agency's decision in this case qualifies as a substantive or an interpretive rule.
For these reasons, I respectfully dissent.